UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD BROWN, | ) | CASE NO. 4:10 CV 0043 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | <u>MEMORANDUM OF OPINION</u> |
| | ) | <u>AND ORDER</u> |
| J.T. SHARTLE, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

Before the Court is *pro se* petitioner Richard Brown's above-captioned petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2241. Petitioner is incarcerated at Federal Satellite Location at Elkton in Youngstown, Ohio.

*Background*

On April 22, 2003, Petitioner pleaded guilty to violating 18 U.S.C. § 922(g) as a felon in possession of a firearm. He was sentenced to 105 months' imprisonment, followed by two years of supervised release.

Petitioner filed a B.P. Form 8 request with his Unit Team at F.S.L. Elkton on July 19, 2009 requesting twelve months' placement in a Community Corrections Center ("CCC"). His request was denied with the following explanation: "Pursuant to the Second Chance Act of 2007, staff have determined that a requested placement of 150-180 days is of sufficient duration to provide the greatest likelihood of successful integration into the community." (Pet.'s Ex., Req. Admin. Rem.

of 7/19/09.)  In August 2009, Petitioner filed an administrative appeal to Warden Shartle.  The Warden denied his request, explaining that Petitioner's placement in a CCC was evaluated under the criteria of the Second Chance Act.

Petitioner appealed to the Regional Director on September 7, 2009.  He amended the appeal to include a reference to *Strong v. Schultz*, No. 08-3821.[1]  The Regional Director denied Petitioner's appeal without addressing *Strong*.  Although Petitioner timely filed his appeal to the General Counsel, three months passed without a reply.  Petitioner considered his appeal denied and proceeded to this Court.

*Analysis*

Petitioner asserts that his rights under the Act and to due process are being violated by Respondents.  He seeks a "preliminary injunction and a temporary restraining order requiring Respondents to transfer Plaintiff to a halfway house with regards to the Second Chance Act." (Pet. at 3.)  He argues he will be irreparably harmed if denied earlier placement in a halfway house. Petitioner believes the BOP is categorically denying prisoners more than six months' placement in a CCC "based upon the memorandums used to implement the Second Chance Act." (Pet. at 3.)  This practice was criticized by several courts, including *Strong*, which Petitioner cites as controlling law in this area.  Petitioner interprets the Act as a mandate to direct the BOP to provide prisoners with twelve months' placement in a CCC.  Petitioner concludes that Respondents' failure to direct his placement in a CCC twelve months before his release date is a violation of the statute.  Moreover, he maintains the BOP failed to evaluate his placement eligibility under the requisite criteria set forth

---

[1]The Court believes this is a reference to *Strong v. Schultz*, 599 F.Supp.2d. 556 (D. N. J. 2009), which was decided February 26, 2009.

in the Act.

*Initial Review*

This matter is before the Court for initial screening. 28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). At this stage, allegations in the petition are taken as true and liberally construed in Petitioner's favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir.2001). As Petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir.2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir.1999). For the reasons set forth below, however, the petition lacks merit.

*Pre-Release Community Confinement*

Before December 2002, the BOP allowed prisoners to be placed "'in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate." *Levine v. Apker*, 455 F.3d 71, 75 (2d Cir. 2006) (quoting U.S. Dept. of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998)). In December 2002, the Department of Justice Office of Legal Counsel issued a memorandum announcing a "significant procedure change" in the BOP's policy of placing offenders in CCCs for all or a significant portion of their sentences. *United States v. Sherpa*, 251 F. Supp.2d 988, 990 (D. Mass. 2003) (internal quotation omitted).

The 2002 memorandum concluded that § 3621 did not confer general authority on the BOP to place an offender in a CCC at any time or for any period of time. Instead, the memorandum concluded the BOP's authority to place an offender in community confinement derived solely from § 3624(c), which limits the time an offender may be placed in a CCC to the lesser of six months or ten percent of the offender's sentence. *See Woodall v. Bureau of Prisons*,

432 F.3d 235, 240 (3d Cir.2005).

The BOP adopted a new policy on December 20, 2002 to reflect Counsel's position than an inmate's release to community confinement should be limited to the last ten percent of his or her term of imprisonment or six months, whichever is shorter. *See id.* This policy prompted a barrage of prisoner lawsuits challenging its validity. Ultimately, the First and Eighth Circuit Courts of Appeals found the 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a CCC and contradicted the plain meaning of § 3621(b). *Elwood v. Jeter*, 386 F.3d 842 (8th Cir.2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004).

The BOP responded by adopting new rules to regulate CCC placement, effective February 14, 2005. The regulations, 28 C.F.R. §§ 570.20 and 570.21, were announced as a "categorical exercise of discretion [by the BOP] for designating inmates to community confinement." 28 C.F.R. § 570.20. The regulations categorically denied CCC placement to any inmate not in the lesser of the last 10 percent or six months of his sentence, except under certain limited, enumerated circumstances. 28 C.F.R. § 570.21. Several district courts in the Sixth Circuit determined that the BOP's policy of categorically excluding placement in community confinement until the last ten percent or six months of a prisoner's sentence is contrary to congressional intent and that the BOP must apply the factors in 18 U.S.C. § 3621(b) when considering CCC placement. *See Luckett v. Eichenlaub*, No. 07-10118, 2007 WL 3124666 (E.D. Mich. Oct.24, 2007); *Halter v. Eichenlaub*, No. 2:07-CV-11072, 2007 WL 2873944 (E.D. Mich. Sept. 25, 2007); *Weirup v. Eichenlaub*, No. 2:07-10672, 2007 WL 2300715 (E.D. Mich. Aug.7, 2007); *Holloway v. Marberry*, No. 2:06-12516, 2007 WL 1880386 (E.D. Mich. June 27, 2007).

*Second Chance Act of 2007*

4

During the course of these challenges, Congress passed the Second Chance Act of 2007 ("the Act"), 42 U.S.C. § 17501, which amended 18 U.S.C. § 3624(c)(1). In substance, the statute was amended to provide: "the BOP Director shall ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 660, 692 (effective April 9, 2008).

On April 14, 2008, the BOP issued an interim policy memorandum to address Residential Rehabilitation Center (RRC) placement considerations under the provisions of the Act. The memorandum states the "categorical timeframe limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 "are no longer applicable and must no longer be followed." The memorandum further requires that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC placement were to be reconsidered under the standards set out in the memorandum. *See Montes v. Sanders*, 2008 WL 2844494, at *1 (C.D.Cal. July 22, 2008); *see also Miller v. Whitehead*, 527 F.3d 752, 755 (8th Cir.2008) ("In reaction to this statute, and the new 12-month maximum placement, the BOP issued guidance directing that 'inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates.'"). The BOP subsequently issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating when an inmate is eligible for transfer to a RRC or home detention. *See*

5

28 C.F.R. §§ 570.20-570.22.² The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six-months.

The BOP's policy memorandum on CCC placement consideration requires that CCC placement decisions be made on an individual basis with reference to the five-factor criteria set out in 18 U.S.C. § 3621(b). How long an inmate may be confined in either CCC or home detention is explained in section 570.21, which states:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
>
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570. Therefore, before a prisoner is even considered eligible for transfer, the BOP must consider the factors set forth in their regulations based on 18 U.S.C. § 3621(b).

A review of the petition and attachments reveal that the respondent considered Petitioner's eligibility under the relevant criteria. The fact that he did not receive twelve months' placement in a CCC does not indicate a violation of the statute. There is no BOP policy in place that

---

²Title 28 of the Code of Federal Register, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

categorically limits a prisoner's placement in a CCC since that was the purpose of enacting the Second Chance Act.  Even if there were a concern that Petitioner was denied the privileges of the Act, the remedy is not an immediate transfer; rather, the remedy is a proper exercise of discretion by respondent.  *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir. 2005).

Petitioner received, through legislative and administrative action, all of the relief to which he is entitled.  In response to Petitioner's request for early release, the Warden explained:

> the Unit Team reviewed the resources of the facility contemplated, the nature and circumstances of your offense, the history and characteristics of your institutional adjustment, as well as any potential statement of your sentencing court. . . . . The Unit Team further considered your need for services, public safety and the necessity of the Bureau of the Prisons to manage its inmate population . . ..

(Pet.'s Ex., Req. Admin. Rem., Part B of 8/25/09.)  This is not a categorical denial of Petitioner's request.  The memorandum supporting such a practice was struck down in several courts, including the District Court of New Jersey in *Strong*.  There, the petitioner, Douglas Strong's RRC placement decision was made on October 2, 2008.  Thus, the decision was made subsequent to the April 14, 2008 memo, but prior to the October 21, 2008 enactment of the regulations implemented by the BOP.  The *Strong* court held that the April 14, 2008 Memorandum issued by the BOP was inconsistent with the Second Chance Act's amendments to 3624(c) because it "impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)." *Strong*, 599 F.Supp.2d at 563.  Petitioner did not initiate his request for placement in a CCC until July 2009, well beyond the October 21, 2008 date on which the BOP implemented its new regulations.  Thus, the BOP's latest amended regulations, which were not in place when *Strong*'s

petitioner sought relief, were in existence when Petitioner sought twelve months' placement in a CCC.

Petitioner has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than the date on which the BOP assigns him – as long it has considered the factors set forth in § 3621(b) as required by the Second Chance Act of 2007. Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner." 18 U.S.C. § 3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Beard v. Livesay*, 798 F.2d 874 (6th Cir.1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).

## *Conclusion*

Based on the foregoing, this petition is dismissed pursuant to 28 U.S.C. § 2243. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Dated: July 27, 2010                                         *s/John R. Adams*
                                                                          JOHN R. ADAMS
                                                                          UNITED STATES DISTRICT JUDGE